# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MICHAEL HAMPTON (#334976)**                    **CIVIL ACTION**

**VERSUS**

**WARDEN BURL CAIN, ET AL.**                    **NO. 13-0015-BAJ-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 31, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MICHAEL HAMPTON (#334976)**                                    **CIVIL ACTION**

**VERSUS**

**WARDEN BURL CAIN, ET AL.**                                    **NO. 13-0015-BAJ-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss (Rec. Doc. 40) and the plaintiff's Motion for Summary Judgment (Rec. Doc. 55).

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Warden Burl Cain, Ass't Warden Kevin Benjaman[1] and Secretary James LeBlanc, complaining that his constitutional rights have been violated by exposure to unreasonable amounts of environmental tobacco smoke at LSP.  The plaintiff further complains that the defendants have interfered with his constitutional right to seek redress of grievances by failing to properly address administrative grievances filed by him.  Finally, pursuant to an Amended Complaint (Rec. Doc. 9), the plaintiff has added LSP Records Analyst Mary Strickland and Parole Board Chairman Sharon Ranatza as defendants herein and complains that his constitutional rights have been violated by the

---

1.  Although the plaintiff named "Brian Benjamin" as a defendant in the Complaint, subsequent pleadings filed by the defendants have made clear that the correct name for this defendant is "Kevin Benjamin."

defendants' failure to allow him to attend a parole board hearing in November, 2012, and by the wrongful determination that he is ineligible for parole consideration.[2]

Addressing first the defendants' Motion to Dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the defendants assert that the plaintiff's Complaint fails to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and more recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that, "where the well-pleaded facts do not permit the

---

2. Although the plaintiff has asserted in subsequent pleadings that he has been the victim of retaliation by prison officials in response to his filing of the instant lawsuit, *see, e.g.,* Rec. Doc. 45 at p. 13, Rec. Doc. 55 at p. 11, Rec. Doc. 63, and Rec. Doc. 80, the Court declines to consider these pleadings to be amendments to the Complaint and declines to grant the plaintiff leave to amend the Complaint to assert a retaliation claim. All of the alleged acts of retaliation occurred after the filing of the original Complaint and are essentially unrelated to the claims asserted therein. In addition, at the time of filing of the original Complaint, the retaliation claims had not been administratively exhausted and so would be subject to dismissal for that reason in any event. *See* 42 U.S.C. § 1997e (requiring administrative exhaustion by inmate litigants prior to the assertion of claims in federal court). Accordingly, the Court will not address the plaintiff's retaliation claims in this Report and Recommendation. Similarly, whereas the plaintiff has filed two pending motions for injunctive relief (Rec. Docs. 63 and 80) and one pending motion for mandamus relief (Rec. Doc. 78), these motions are principally concerned with the plaintiff's claims regarding the alleged incidents of retaliation. Accordingly, the Court recommends that these pending motions be denied.

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679.  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (citation omitted).  Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, as amended, the plaintiff alleges that he is being compelled to live inside of a dormitory at LSP where inmates smoke cigarettes, thereby subjecting him to environmental tobacco smoke ("ETS").  In addition, the plaintiff asserts that whereas the State of Louisiana has passed a law prohibiting smoking in all prison facilities, LSP has adopted an unconstitutional non-smoking policy which does not comport with state law because, while the policy prohibits smoking "indoors" at the prison, *i.e.,* within buildings, it permits smoking in designated outside areas of the prison.  The plaintiff asserts that this policy subjects him to cruel and unusual punishment and violates his right to equal protection under the law.  The plaintiff also complains that in November, 2012, defendant Mary Strickland refused to allow him to attend a parole board hearing, that defendants Strickland and Ranatza have wrongly determined

that he is ineligible for parole consideration, and that defendant Strickland has unilaterally modified the plaintiff's prison record to reflect that he is not so eligible.  Finally, the plaintiff complains that whereas he filed administrative grievances at the prison relative to these claims (in November and December, 2012, respectively), prison officials failed to respond thereto or placed the grievance on administrative backlog pending the resolution of previously-filed grievances.  The plaintiff asserts that this administrative backlog policy, pursuant to which grievances are handled sequentially, violates his rights to due process and to access to the courts.

Addressing first the plaintiff's claims regarding the alleged refusal to allow him to attend a parole board hearing and the alleged wrongful determination that he is not eligible for parole consideration, the Court concludes that the plaintiff has failed to state a cause of action relative to these assertions.  As a general rule, an inmate may not utilize a civil rights action filed pursuant to 42 U.S.C. § 1983 to challenge the fact or duration of his confinement or to obtain an immediate or earlier release from confinement.  Such relief may only be obtained through the filing of an application for a writ of *habeas corpus* under 28 U.S.C. §§ 2241 or 2254.  *See Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973).  Notwithstanding, an inmate is allowed to seek review of the procedures utilized in determining parole *eligibility* and may do so through the filing of a civil rights action under § 1983.  *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). This is because a successful result will not necessarily translate into an immediate or earlier release from confinement but, at most, may provide the inmate with a new determination of parole eligibility.  *Id.*  However, in order to succeed in connection with any civil rights action filed pursuant to 42 U.S.C. § 1983, an inmate plaintiff must be able to allege and show (1) that a constitutional right has been violated, and (2) that the conduct complained of has been committed by a person acting under color of state law.  *See Doe v. Covington County School*

*District,* 675 F.3d 849, 854 (5th Cir. 2012). In the instant case, the plaintiff will be unable to make this showing in connection with this claim.

According to the allegations of the plaintiff's pleadings and associated attachments, it appears that the plaintiff was originally convicted in 1994 of armed robbery and sentenced to serve twenty (20) years in confinement. After serving approximately half of that sentence, he was granted a supervised release from confinement in May, 2003, in accordance with the Louisiana good time statutes, La. R.S. 15:571.3, *et seq.* Thereafter, while on supervised release, the plaintiff was arrested in 2010 and charged with having committed two new offenses, *i.e.*, simple burglary and attempted simple burglary. As a result, he was brought before the Louisiana Parole Board, his supervised release was revoked, and he was thereafter re-committed to the custody of the Louisiana Department of Corrections upon a finding that he had violated the terms of his supervised release. According to records provided by the plaintiff and reviewed by the Court, he subsequently pleaded guilty to the two new offenses in October, 2010, and was sentenced to serve additional concurrent terms of eight (8) and six (6) years in confinement in connection with those charges.[3] He asserts, however, that he should still be eligible for parole consideration, and he complains of the subsequent determination that he is not so eligible. Liberally interpreted, the plaintiff is asserting that his constitutional right to due process and equal protection has been violated in connection with this determination of ineligibility and that

---

3. The plaintiff has filed a previous lawsuit in this Court, complaining of the alleged violation of his constitutional rights in connection with the 2003 revocation of his supervised release. *See Michael Hampton v. Louisiana State Parole Board, et al.*, Civil Action No. 11-0572-BAJ-CN. This Court has referred to certain documents filed in that related proceeding to confirm details relative to plaintiff's procedural history. In this regard, a District Court may take judicial notice of the record in prior related proceedings. *Missionary Baptist Foundation of America, Inc. v. Wilson*, 712 F.2d 206, 211 (5th Cir. 1983).

the defendants have violated the constitutional prohibition against the application of *ex post facto* laws to his original 1994 conviction.

The plaintiff is mistaken in his interpretation of the Louisiana statutory scheme. Under Louisiana law, there is a dual scheme pursuant to which an inmate may be released from confinement prior to serving his full term of imprisonment through either the earning of good time credits or through the discretionary granting of parole by the Louisiana Parole Board (pretermitting consideration of the extraordinary remedies of clemency and pardon). First, under the Louisiana good time statutes, La. R.S. 15:571.3 *et seq.,* as written at the time of the plaintiff's 1994 conviction, an inmate could enter into a written agreement with prison officials pursuant to which he earned, in lieu of incentive wages, up to thirty days per month of credit toward an early release from confinement upon good behavior. Upon thereafter serving approximately half of his sentence in confinement, he would become entitled to a good time release, and this release would be treated "as if on parole," *i.e.*, it would be subject to supervision by the Louisiana Parole Board and would be subject to certain restrictions and conditions of release. La. R.S. 15:571.5. In the event that the inmate were subsequently found to have violated those restrictions or conditions, the release could potentially be revoked by the Parole Board, and the inmate would then be returned to the physical custody of the Department of Corrections to serve the remainder of his term, forfeiting all previously earned good time credits. *Id.  See also* La. R.S. 15:571.4(B)(2). This is what happened to the plaintiff in this case. Specifically, the plaintiff chose to exercise his option to waive incentive wages in exchange for increased good time credit and, after serving approximately 10 years of his 20-year sentence, he was granted a good time release in 2003. Notwithstanding, he was returned to custody in 2010 when he violated the terms of that release, specifically by committing two new felony offenses to which he later

pleaded guilty.  Upon re-commitment to the custody of the Louisiana Department of Corrections, his previously-earned good time credits were forfeited by operation of law, and his new release date was apparently calculated based upon the approximate ten (10) years remaining in his sentence at the time of his good time release.  This is reflected in the plaintiff's Master Record, which reflects a "F[ull] T[erm] D[ate]" for the plaintiff of March 1, 2020 (comprising the approximately 10 years remaining in his original 20-year sentence, calculated from the date of his re-arrest in 2010).  *See* Rec. Doc. 12-12.  Notwithstanding, by operation of both the pertinent Louisiana good time statute and the plaintiff's prior agreement to waive incentive wages in exchange for good time credits, the plaintiff again became eligible to earn good time credit toward early release at the rate of thirty days per month, and upon serving approximately half of the remaining 10-year period with good behavior, he will again be entitled to a good time release, "as if on parole."  This is also reflected in the plaintiff's Master Record, which indicates an "Adj[usted]" release date of February 7, 2015, which is at approximately the mid-point of the remaining 10-year period.  *See id.*  Thus, the plaintiff's entitlement under the Louisiana good time statutes has not been adversely affected by the defendants' actions.[4]

In contrast to the foregoing, the statutory Louisiana parole scheme is different.  Under the Louisiana parole statutes, La. R.S. 15:574.4, *et seq.*, inmates may become eligible for discretionary parole consideration by the Louisiana Parole Board upon serving a certain

---

4.  Although the plaintiff complains that the signed agreement or "contract" that he entered into with prison officials in 1994, pursuant to which he opted to earn good time credits in lieu of incentive wages, has not been honored, the Court fails to discern in what manner this is so.  As noted above, inasmuch as the plaintiff was released from confinement after serving approximately half of his 20-year sentence, he was given the benefit of earning approximately 30 days per month of good time credit then, and his current adjusted release date of February 7, 2015, reflects his apparent continuing ability to earn good time credit at the same rate now.

percentage of their respective sentences.  Whether an inmate is eligible for parole consideration, however, is determined entirely by application of the pertinent statutes, and these statutes limit parole eligibility in numerous instances, specifically for inmates who have been convicted of certain designated offenses or who have been convicted of multiple offenses.  In the instant case, the offense originally committed by the plaintiff in 1994, armed robbery, is one for which parole eligibility is prohibited and was prohibited at the time of commission of the original offense.  *See* La. R.S. 14:64.  Accordingly, although the plaintiff's Master Prison Record may have originally indicated that he was eligible for parole consideration, this was a mere clerical error which was subject to correction.  Thus, as stated by prison officials in responding to the plaintiff's administrative grievance, inasmuch as the offense of armed robbery "is not Parole Eligible," his master record "was corrected to reflect such."  *See* Rec. Doc. 18-3.  Accordingly, inasmuch as the offense committed by the plaintiff made him ineligible for parole consideration from the outset, his constitutional rights have not been violated in connection with the ensuing modification of his prison records or with the refusal to allow him to attend a parole board hearing in 2012.  To the extent that the plaintiff's argues to the contrary, he is apparently misunderstanding or conflating the difference between the application of the good time statutes and the parole release statutes in connection with the calculation of his term of confinement.  A proper understanding of these different statutes, however, as outlined above, makes clear that the plaintiff's rights have not been violated as a result of the defendants' actions.  This claim, therefore, is subject to dismissal.

Turning to the plaintiff's claim regarding exposure to ETS at LSP, he asserts in his Complaint that whereas the State of Louisiana has enacted legislation prohibiting smoking in state correctional facilities, prison officials have violated the legislative intent of the referenced

statute by implementing an unconstitutional policy which allows inmates and security officials to smoke in designated outdoor areas of the prison.  In addition, the plaintiff asserts that although he has been assigned to live in a non-smoking dormitory at LSP, he is housed with co-inmates who are smokers, and this has resulted in his exposure to ETS within the dormitory.  In his original administrative grievance filed with prison officials relative to this claim, he asserted only that he was "deeply exhausted" from being forced to endure second hand cigarette smoke. *See* Rec. Doc. 12-4 at p. 1.  In his subsequently-filed summary judgment pleadings, he has made additional conclusory assertions, without any factual corroboration whatever, that because of non-enforcement of the non-smoking policy at LSP, he has been subjected to "heavy amounts" of ETS that have caused him to suffer "a substantial amount of harm ... and irreparable damage to [his] lungs and his overall health."  The only factual statement made relative to such harm or damage, however, is that "it hurt's the plaintiff's chest area of his body real bad when people are smoking around the plaintiff."  *See* Rec. Doc. 55 at pp. 4-6.

In response to the plaintiff's allegations, the defendants first contend that the plaintiff has failed to state a claim asserted against them in their official capacities.  In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks the recovery of monetary damages against state officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989).  Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.  *Id.* at 25.  Accordingly, the plaintiff's claim for

monetary damages asserted against the defendants in their official capacities is subject to dismissal.  In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state.  *Id.*[5]

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the defendants next assert that the plaintiff is not entitled to the recovery of compensatory damages in this case because he has not alleged a physical injury sufficient to support such recovery.  In this regard, pursuant to 42 U.S.C. § 1997e(e), a prisoner plaintiff is barred from the receipt of compensatory damages for mental or emotional injury in the absence of some showing of physical injury.  In the instant case, whereas the plaintiff has made a conclusory statement that he has suffered irreparable harm and damage as a result of exposure to ETS, this conclusory assertion is not supported by any factual corroboration.  Specifically, there is no allegation or evidentiary showing that the plaintiff has sought medical attention, obtained treatment, or been diagnosed with any condition or symptom consistent with exposure to ETS. The most that the plaintiff has alleged is that his chest hurts when he is in the vicinity of

---

5.  Notwithstanding the foregoing, a claim for injunctive relief asserted in federal court against a defendant acting in his official capacity is not prohibited under the Eleventh Amendment because such a claim is not treated as a claim against the state.  *Will v. Michigan Department of State Police, supra,* at 71; 15 *Am. Jur. 2d Civil Rights* § 101.  The plaintiff, however, included no prayer for injunctive relief in his original Complaint, praying only for compensatory and punitive damages.  *See* Rec. Doc. 1 at p. 6.  Further, whereas the plaintiff included a prayer for injunctive relief in his Amended Complaint, Rec. Doc. 9, he did so only relative to his claim asserted therein regarding parole eligibility.  *See id.* at p. 4. Accordingly, inasmuch as the Court has determined that the plaintiff is not entitled to relief in connection with his parole eligibility claim, the Court need not address the plaintiff's claim relative to prospective injunctive relief.

smokers.  In the Court's view, this is not sufficient to establish the existence of a qualifying

physical injury.  *See Harris v. Ashby*, 45 Fed. Appx. 325, *2 (5th Cir. 2002) (finding that the

plaintiff's "merely conclusional allegations that he was harmed by exposure to environmental

tobacco smoke are insufficient to allege a constitutional violation"); *Jones v. Epps*, 2011 WL

1103733, *3 (S.D. Miss. March 23, 2011) (granting summary judgment to the defendants in

connection with an inmate's ETS claim where the inmate alleged only that he "had on occasion

experienced choking, headaches, and an increase in blood pressure as a result of the second-hand

smoke exposure"); *Noel v. Wilkinson*, 2008 WL 1859965, *2 (W.D. La. April 3, 2008) (rejecting

an inmate's claim for compensatory damages resulting from exposure to ETS where the inmate

alleged only that he had made "numerous sick calls" but failed to provide any factual detail

regarding his alleged injuries).  Accordingly, this aspect of the plaintiff's claim should be

rejected.  Although the plaintiff might still be entitled to recover nominal or punitive damages,

*see Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007); *Noel v. Wilkinson, supra*, he

would need to establish some constitutional violation by the defendants in order to merit such

recovery.

Finally, turning to a substantive review of the plaintiff's claim for nominal or punitive

damages in connection with his alleged exposure to ETS, the United States Supreme Court has

found that prison officials may violate the Eighth Amendment's prohibition against cruel and

unusual punishment by exposing inmates to excessive levels of ETS.  *Helling v. McKinney*, 509

U.S. 25, 33-35 (1993).  The *Helling* Court also formulated a "two-prong test" to determine

whether an inmate's exposure to ETS has resulted in a transgression of constitutional

proportions.  *Id.* at 35-36.  *See also Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001).

The first prong of the test is objective, necessitating that the inmate demonstrate that he is or was

being exposed to unreasonably high levels of environmental tobacco smoke.  *Id. at 35.*  An

evaluation of this factor requires an inquiry into the seriousness of the potential harm and the

likelihood that exposure to ETS will actually cause injury.  *Id. at 36.*  "It also requires a court to

assess whether society considers the risk that the prisoner complains of to be so grave that it

violates contemporary standards of decency to expose anyone unwillingly to such a risk."  *Id.*

"In other words, the prisoner must show that the risk of which he complains is not one that

today's society chooses to tolerate."  *Id.*  The second prong is subjective and requires that the

plaintiff show that the defendants have been deliberately indifferent to the plaintiff's health or

well-being.  In this context, deliberate indifference requires that a prison official actually knows

that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take

reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  The official must

both be aware of facts from which an inference may be drawn that a substantial risk of serious

harm exists, and he must also actually draw the inference.  *Id.* at 837.  Although the adoption of a

smoking policy bears heavily on the inquiry into deliberate indifference, so also does the

question of enforcement thereof.  *See Helling v. McKinney, supra*, 509 U.S. at 36-37.

In the instant case, the parties agree that there is in fact a written no-smoking policy in

force at LSP, compelled by the Louisiana Smoke Free Air Act,[6] and this policy is set forth in

Department Regulations Nos. A-02-020 and C-03-008.  These Regulations prohibit smoking by

offenders and employees "inside areas of every public building and place of employment

operated by the Department," and also provide that "each Unit Head is authorized to designate

smoking areas outside of these public buildings and places of employment."  *See* Rec. Docs. 51-

---

6.  La. R.S. 40:1300.251, *et seq*.

2 and 51-3. These Regulations further provide that signs shall be posted throughout the facility advising of the prohibition against smoking and that offenders and employees found to be in violation of the non-smoking policy may be subject to disciplinary action.

Initially, although the plaintiff complains that the referenced policy is unconstitutional and that it violates state law because it authorizes smoking in outside areas of the prison, this contention is without merit. There is no jurisprudence discovered by the Court or cited by the plaintiff which has concluded that exposure to ETS in exterior locations results in a condition that, objectively, is "so grave that it violates contemporary standards of decency" or that prison officials, by allowing it, are subjectively deliberately indifferent to inmates' health or well-being. *See Helling v. McKinney, supra*, 509 U.S. at 36. Accordingly, this claim should be rejected. Further, to the extent that the plaintiff complains that the prison policy is violative of the Louisiana statute relative to smoking in public facilities, this is a mere claim of the violation of state law, which is not actionable under 42 U.S.C. § 1983. *See Hampton v. Brown*, __ Fed. Appx. __, 2013 WL 5916814 (5th Cir. May 21, 2013) (finding that the plaintiff's "reliance on Louisiana law prohibiting smoking in prisons is ... unavailing, as § 1983 relief is available only for violations of federal statutory or constitutional rights"). This claim, therefore, should similarly be rejected.

The Court next finds that the plaintiff has failed to allege sufficient personal involvement on the part of the named defendants in the events alleged. In this regard, in order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that

the defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.  *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing standard, and upon a review of the plaintiff's Complaint, it appears that the plaintiff has failed to sufficiently allege that the named defendants have undertaken any action which may be characterized as a violation of the plaintiff's constitutional rights.  Specifically, the plaintiff makes no mention of defendants LeBlanc, Cain or Benjamin in the body of his original Complaint and only lists these persons as named defendants in the Caption thereof.  Moreover, other than complaining therein of the alleged unconstitutionality of the non-smoking policy, the plaintiff does not assert that any of these defendants have been subjectively aware of the extent of his exposure to ETS, of any substantial risk of serious harm faced by him, or of any medical complications which he has experienced as a result of such exposure.  The mere assertion in the plaintiff's administrative grievance that he has "wr[itten] the warden's office in the past concerning smoking in the dorms" is not sufficient to establish direct knowledge or participation by these supervisory officials.  As Secretary of the Louisiana

Department of Public Safety and Corrections and as Head Warden at LSP, respectively, defendants LeBlanc and Cain principally have supervisory responsibility over the operation of the prison and are not present on a regular or daily basis in the plaintiff's living area. And as for defendant Benjamin, the plaintiff only identifies this defendant as an Assistant Warden at LSP, and the only potential connection that the Court has found to defendant Benjamin in the plaintiff's evidentiary submissions is the defendant's signature on a form approving a First Step Response to an administrative grievance filed by the plaintiff relative to alleged exposure to ETS. *See* Rec. Doc. 49-1. In that First Step Response, which was filed herein in response to a discovery request, numerous prison officials are specifically identified who have been more directly involved in the conditions faced daily by the plaintiff in his LSP East Yard dormitory, specifically the East Yard Chief of Security Col. Martin Allen, the East Yard D Team Supervisor Lt.Col. Wilfred Cazelot, the East Yard C Team Supervisor Major Michael Laborde, the East Yard B Team Supervisor Major Daniel Davis, and the East Yard Ass't Warden Perry Stagg. Notwithstanding, the plaintiff has not sought to name any of these persons as defendants in this proceeding. The Court thus finds that the plaintiff's allegations relative to defendants LeBlanc, Cain and Benjamin amount to no more than claims of mere supervisory responsibility and/or negligent supervision on the part of these defendants, which claims are conclusory and not sufficient to support a finding of liability under § 1983. Accordingly, the plaintiff has failed to state a claim upon which relief may be granted as to these defendants, and they are entitled to dismissal from this proceeding.[7]

---

7. This is not the first federal lawsuit filed by the plaintiff relative to exposure to ETS. In 2010, he filed a similar lawsuit in the Western District of Louisiana, complaining of such exposure at the Jackson Parish Correctional Center in Jonesboro, Louisiana. That claim was dismissed on motion for summary judgment, *see Hampton v. Brown*, 2012 WL 1491914 (W.D.

Further, to the extent that the plaintiff complains of the defendants' handling of his administrative grievances, this claim is also not one of constitutional dimension.  The law is clear that the plaintiff does not have a constitutional right to have his administrative grievances properly investigated or favorably resolved.  *Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007).  Moreover, there is no procedural due process right inherent in such a claim.  As stated by the United States Court of Appeals for the Fifth Circuit in *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.  As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Id.* at 373-74.  Accordingly, the plaintiff's claim asserted against the defendants of an alleged failure to properly investigate, respond or take action in response to his administrative grievances is without legal foundation, and the defendants are entitled to judgment as a matter of law in connection with this claim.

Nor does the plaintiff state a viable constitutional claim regarding the procedures utilized by the prison to resolve administrative grievances.  Although the plaintiff complains that these procedures have resulted in a denial of his access to the courts, he is clearly mistaken in this regard.  First, the rule which allows prison officials to place an inmate's grievance on

---

La. March 4, 2012), and the dismissal was upheld on appeal upon a finding that, in light of the prison's non-smoking policy, of signage posted at the facility advising of the policy, and of enforcement of the policy through disciplinary action, the evidence did not demonstrate that the defendants were deliberately indifferent to the risk of exposure to ETS and, further, that the plaintiff's "vague assertions that the policy was not sufficiently enforced [was] not enough to demonstrate a genuine dispute of material fact."  *See Hampton v. Brown,* 2013 WL 5916814 (5th Cir. May 21, 2013).

administrative backlog because he has filed multiple prior grievances, resulting in a delayed consideration of later-filed grievances until prior grievances have been addressed and resolved, has been upheld as constitutional.  *See Oestriecher v. Wallace, 2007 WL 4233690, \*3* (E.D. La. Nov. 27, 2007) (noting that "the utilization of a backlog system for multiple grievances is constitutionally permissible").  *See also Moran v. Jindal*, 450 Fed. Appx. 353, 354 (5th Cir. 2011); *Thomas v. Prator*, 172 Fed. Appx. 602, 603 (5th Cir. 2006).  Further, the plaintiff cannot complain about any alleged denial of access to the courts in this case because his grievances have ultimately been accepted and addressed by prison officials, and he has been allowed to assert his claims in this judicial arena, at least up until this point.[8]  Accordingly, he has not been shown to have suffered any prejudice in fact as a result of the alleged mis-handling of his administrative grievances.

Finally, the plaintiff makes numerous assertions in his pleadings that the defendants' actions have resulted in a denial of his right to equal protection under the law.  His contentions in this regard are unclear, but he appears to suggest that he is entitled to the "equal protection of the laws ... concerning state parole re-hearings," *see* Rec. Doc. 45 at p. 12, and to the "equal protection of the same Smoke Free Air Act" that is granted to "other citizens of the United States

---

8.  Whereas the defendants assert in their Answer to the plaintiff's Complaint and in a recent pleading, *see* Rec. Docs. 41 and 59, that the plaintiff has failed to exhaust administrative remedies as mandated by 42 U.S.C. § 1997e, they have not presented any argument or evidentiary support relative to this assertion, and the Court makes no determination in connection therewith.  Notwithstanding, the Court notes that inasmuch as the plaintiff apparently filed administrative grievances relative to his claims in November and December, 2012, *see* Rec. Docs. 12-4, 12-6 and 12-7, inasmuch as he asserted in his Complaint that he had not received responses thereto (either because prison officials ignored same and/or placed them on administrative backlog), and inasmuch as he filed the instant Complaint on or about January 6, 2013, less than two months after the filing of the first such grievance (which did not allow prison officials sufficient time to address the grievances under prison rules), it appears that his claims were not in fact administratively exhausted at the time that he filed the instant Complaint.

who are under the governing protections of the ... Act in the State of Louisiana." *See, e.g.,* Rec. Doc. 55 at p. 3.  In this regard, the Equal Protection Clause of the Fourteenth Amendment requires essentially that all persons who are similarly situated should be treated alike. *See Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996).  In order to successfully plead an equal protection claim, however, an inmate plaintiff must allege and show that he is a member of a specific identifiable group and that prison officials have acted with a discriminatory purpose because of such membership.  A discriminatory purpose "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).  An inmate cannot base an equal protection claim solely on a personal belief that he has been a victim of discrimination.  *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995).  Specifically, vague and conclusory allegations are insufficient to state an equal protection claim.  *See Pedraza v. Meyer*, 919 F.2d 317, 318 n. 1 (5th Cir. 1990).  In the instant case, all that the plaintiff seems to allege is that he should be entitled to all of the rights available generally to other inmates and/or to other "citizens of the United States."  These assertions are insufficient to state a claim that he is "similarly situated" to any persons who have been treated differently or that prison officials have intentionally singled him out, as a member of a particular identifiable group, for disparate treatment.  Accordingly, this claim does not rise to the level of a constitutional violation and must be dismissed.

Nor does the plaintiff's Motion for Summary Judgment (Rec. Doc. 55) suggest a different result.  Pursuant to well-established legal principles, summary judgment is appropriate only when the moving party has satisfied the initial burden of showing that he is entitled to judgment as a matter of law and that there is no genuine disputed issue as to any material fact.  Rule 56,

Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  The plaintiff's motion in the instant case does not make this showing and does not present any evidence which shows that he is entitled to relief.  Accordingly, the plaintiff's Motion for Summary Judgment should be denied.

To the extent that the plaintiff's Complaint may be interpreted as seeking to invoke the supplemental jurisdiction of this court, district courts may decline the exercise of supplemental jurisdiction over a plaintiff's state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, having recommended that all of the plaintiff's federal claims asserted against the defendants be dismissed, the Court further recommends that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims.

## RECOMMENDATION

It is recommended that the Court decline supplemental jurisdiction in connection with the plaintiff's claims arising under state law.  It is further recommended that the plaintiff's Motion for Summary Judgment (Rec. Doc. 55) be denied and that the defendants' Motion to Dismiss (Rec. Doc. 40) be granted, dismissing the plaintiff's claims asserted against the defendants, with

prejudice.  Finally, it is recommended that the plaintiff's pending motions for injunctive and

mandamus relief (Rec. Docs. 63, 78 and 80) be denied, and that this action be dismissed.

      Signed in Baton Rouge, Louisiana, on January 31, 2014.


**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**